UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL BENTA,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>DANIEL PARAMO,<br><br>　　　　　Respondent. | No. 2:18-cv-0139 JAM KJN P<br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

　　　Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2014 conviction for attempted murder, for which he was sentenced to 45 years-to-life in state prison. Petitioner claims that the trial court erred in refusing petitioner's request for a pinpoint jury instruction on provocation. After careful review of the record, this court concludes that the petition should be denied.

II. Procedural History

　　　On September 16, 2014, a jury found petitioner guilty of attempted murder, arson of an inhabited structure, and arson of property. (Clerk's Transcript ("CT") 297-99; 346-48.) The jury also found three special allegations to be true. (CT 300-02.) On October 14, 2014, petitioner was sentenced to thirteen years plus thirty-two years-to-life in state prison. (CT 341; 346-48.)

1

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District. On November 18, 2016, the Court of Appeal affirmed the conviction in a reasoned decision. (Respondent's Lodged Document ("LD") 1.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on January 25, 2017. (LD 6.)

Petitioner filed the instant petition on January 2, 2018. (ECF No. 1.)

III. Factual Background[1]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A jury convicted defendant Manuel Benta, Jr., of attempted murder and found it was willful, deliberate, and premeditated. (Pen. Code, §§ 664/187; count 1.) [FN 1] In connection with count 1, the jury sustained allegations defendant intentionally and personally discharged a firearm, causing great bodily injury (§ 12022.53, subd. (d)), and personally inflicted great bodily injury (§ 12022.7). The jury also convicted defendant of arson of an inhabited structure (§ 451, subd. (b); count 2) and arson of property (§ 451, subd. (d); count 3). In connection with count 2, the jury sustained the allegation defendant used an accelerant to commit the arson. (§ 451.1, subd. (a).)
>
> [FN 1: Undesignated statutory references are to the Penal Code.]
>
> Sentenced to state prison, defendant appeals. He contends the trial court prejudicially erred in refusing his pinpoint instruction on provocation and insufficient evidence supports the jury's finding that he used an accelerant. We affirm the judgment.
>
> FACTS
>
> Horace Randazzo met defendant through work in 2006. They became friends and went fishing together. In 2008, Randazzo had to quit working after having a heart attack. By 2011, he had lost contact with defendant who left work to go to school. In September 2013, Randazzo rented a house in the City of Shasta Lake. Shortly thereafter, he saw defendant who explained he was getting a divorce from his spouse who lived near Randazzo. Between 2006 and 2013, Randazzo met defendant's spouse five or six times. Defendant accepted Randazzo's invitation to live in Randazzo's house and

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Manuel Benta, Jr., No. C077767 (Nov. 18, 2016), a copy of which was lodged by respondent as LD 1 on April 11, 2018.

2

defendant helped put up a wall for a second bedroom.

On the morning of October 2, 2013, Randazzo's vehicle had been towed to a repair shop, so defendant gave Charlotte Pisano, Randazzo's girlfriend, a ride to another part of town. Defendant returned 30 minutes to an hour later. Randazzo was in the bathroom, washing his hands at the sink. Defendant approached Randazzo and shot him in the back without warning. When Randazzo turned around, he saw defendant with a semiautomatic gun that appeared jammed and asked defendant, "What in the hell are you doing?" Defendant responded, "I know you're running away with my wife after you pick up [the] car and that's not gonna happen." Randazzo replied, "What the hell are you talking about?" Randazzo also replied he had no interest in defendant's spouse. Defendant aimed at Randazzo's head and Randazzo raised his right hand. Defendant fired the gun and the bullet hit Randazzo's hand. Defendant left, closing the bathroom door behind him. Randazzo locked the bathroom door and called 911 on his cell phone. Defendant mumbled something to Randazzo through the door. Shortly thereafter, Randazzo saw smoke coming under the bathroom door. Randazzo was fearful defendant was still in the house so he did not open the door. Instead, he tried unsuccessfully to open the bathroom window. He broke the window with the handle of a toilet plunger and yelled for help. Some people outside helped him get out of the house. Randazzo was transported to the hospital where he remained for five to seven days and had surgery on his hand. He faced one to three more surgeries on his hand. The bullet remained in his back.

Prior to the day of the shooting, Randazzo heard a tape recording possessed by defendant. Randazzo disagreed with defendant's interpretation of the recording as that of defendant's spouse having sexual intercourse. Randazzo claimed all he heard was some rustling leaves.

An officer who interviewed Randazzo at the hospital testified Randazzo mentioned defendant's spouse had come by the house at 8:15 a.m. that day, but did not come inside. Randazzo also stated, after he had been shot in the back, defendant said, "Why are you screwing my wife?" and, "I know you're screwing my wife. You guys are going to run away with the money."

Defendant surrendered to the police not far from the burning house. When interviewed by the police, defendant admitted shooting Randazzo twice and would have continued to shoot but ran out of bullets. Defendant also admitted he set Randazzo's house on fire with an accelerant. A recording of the interview was played for the jury. Defendant obtained the gun he used to shoot Randazzo from his spouse's garage, and then set a fire in her garage. Defendant thought his spouse and Randazzo were having an affair and that Randazzo had been drugging him. Defendant claimed to have seen paperwork which suggested to him Randazzo had plane tickets. Defendant claimed his spouse had stopped by Randazzo's house at 7:30 or 8:00 a.m. that morning on her way to work. Defendant spoke with her and then confronted Randazzo, accusing him of being a law enforcement officer and making him (defendant) believe he was under house

3

> arrest. Randazzo denied it but defendant shot him anyway. Defendant looked for an accelerant and "popped . . . open" a "couple of accelerant cans" to set the house on fire. Defendant did not testify at trial.
>
> Defendant's clothing was retrieved immediately after the crime. According to a criminalist, the presence of methyl ethyl ketone, a solvent (used as a cleaner and in lacquer thinners), was detected on defendant's clothing. The substance is an ignitable liquid, readily started on fire, and could be used as an accelerant. At Randazzo's house, an aerosol can (a can of oven cleaner) used as an accelerant was found hidden in a pile of towels, clothing and rags, in front of a sofa in the living room, an area which had the most fire damage. A trail of paint in the house did not burn. According to the fire investigator, the house overall had moderate fire damage.
>
> A pile of burned items and clothing were found in the detached garage of the home of defendant's spouse. The structure had smoke damage throughout. Packed bags were found inside her house.

(People v. Benta, slip op. at 2-4.)

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

////

4

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

5

also be unreasonable." Williams v. Taylor, 529 U.S. at 411.  See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but

does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

////

V. Alleged Jury Instruction Error

    A. The Parties' Positions

        1. The Petition

Petitioner incorporates arguments made by defense counsel in the motion for new trial filed in the trial court in 2014, as well as appellate counsel's arguments contained in the petition for review filed in the California Supreme Court. (ECF No. 1 at 8-10; 17-25.) Petitioner argued that the trial court misdirected the jury in a matter of law because in refusing to instruct on provocation, the jury was not provided the legal definition of provocation, resulting in the limited application of the commonly understood definition of provocation as "caused by the victim," resulting in the attempted murder verdict because there was little evidence of the victim's alleged provocation adduced at trial. However, because the jury was not informed that provocation can also derive from "conduct reasonably believed by the defendant to have been engaged in by the victim," the jury could not know that petitioner's initial suspicions of an affair, seeing the victim's bags packed with an airline ticket out of town, visiting his wife and seeing her bags packed as well, and his own statements as he shot the victim, could be viewed as evidence of provocation. Because the theory of provocation was petitioner's entire defense, he argued the refusal to instruct on provocation prejudiced petitioner.

    On appeal, petitioner contended that at trial he argued that the shooting was attempted voluntary manslaughter, based on heat of passion. (ECF No. 1 at 17.) Although the trial court instructed the jury on attempted voluntary manslaughter, it refused defense counsel's request for a pinpoint instruction on the question of provocation. The Court of Appeal rejected petitioner's argument, finding there was no basis for giving the attempted voluntary manslaughter instruction at all because there was "no evidence [the victim] admitted that he was having an affair with petitioner's spouse or that [the victim] had been seen with [petitioner's] spouse in compromising circumstances." (ECF No. 1 at 17.) Petitioner countered that the trial court's focus should have been the state of the mind of petitioner and whether he had formed the requisite intent, citing state court decisions finding that provocation must be caused by the victim, <u>or</u> be conduct the defendant reasonably believed the victim caused. (ECF No. 1 at 18.) Petitioner contended that

under the U.S. Constitution, he was "entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." (ECF No. 1 at 24, quoting Mathews v. United States, 485 U.S. 58, 63 (1998). Thus, he argues, the failure to instruct on provocation was reversible error.

2. The Answer

Respondent counters that petitioner fails to demonstrate that the state court's denial of this claim was objectively unreasonable because there was no objective basis for petitioner's apparently sincere belief that his wife and the victim were having an affair. (ECF No. 16 at 11.) To the extent petitioner argues he had a right to have the jury know they could convict him of attempted voluntary manslaughter if they had a reasonable doubt as to his guilt for attempted murder, such claim fails to present a federal constitutional question. (ECF No. 16 at 15, citing Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Because petitioner's proposed pinpoint jury instruction was intended to expand on the lesser-included offense instruction given, respondent argues that the refusal to give such pinpoint instructions fails to present a federal constitutional claim. But even assuming petitioner had a constitutional right to the requested pinpoint instruction, the court's rejection of the claim was not objectively unreasonable because no objective evidence was adduced at trial to support petitioner's statements at the time of the crime. (ECF No. 16 at 15.) Thus, respondent maintains that the state appellate court's decision that petitioner was not entitled to either an attempted voluntary manslaughter instruction or the requested pinpoint instruction was reasonable. (ECF No. 16 at 16, citing see Menendez v. Terhune, 422 F.3d 1012, 1029-30 (9th Cir. 2005) (no error under state law and therefore no due process violation in failing to instruct on imperfect self-defense where there was insufficient evidence to support the instruction).) Respondent notes that the state appellate court also found the requested pinpoint instruction "was argumentative and potentially confusing because it related only to the subjective component of provocation and did not address the objective component." (ECF No. 16 at 16.) Respondent argues that this court is bound by the state court's rulings, citing see Bradshaw v. Richey, 546 U.S. 74, 76 (2005); see also Medley v. Runnels, 506 F.3d 857, 862 (9th Cir. 2007). (ECF No. 16 at 16.) Finally, respondent argues that petitioner's failure to

identify any Supreme Court case clearly establishing that petitioner has a constitutional right to an instruction on a state law theory of defense that is not supported by the evidence renders petitioner's claim fatal. (Id.)

### 3. Petitioner's Reply

Petitioner objects that all of the state courts focused on provocation by the victim rather than on petitioner's state of mind. He argues that the trial court found evidence that petitioner believed his wife was having an affair with the victim and found there were facts to support giving jury instruction CALCRIM No. 603: petitioner's wife was at the victim's residence early that morning; and petitioner had infidelity on his mind when he pulled the trigger based on comments he made while shooting. (ECF No. 20 at 2, citing RT 317.) Petitioner contends that all of the state courts wrongfully ignored the second "or heat of passion" prong of California Penal Code § 192(a) (voluntary manslaughter), instead focusing on the lack of sudden quarrel, the first prong, thus eviscerating his defense.

Further, petitioner argues under state law, the trial court was required to instruct the jury that the provocation which incited homicidal conduct in the heat of passion must be caused by the victim <u>or</u> be conduct reasonably believed by the petitioner to have been engaged in by the victim. (ECF No. 20 at 3.) Petitioner contends that such provocation instruction was supported by the following evidence adduced through the victim's testimony, as follows:

- Petitioner stated "you're running away with my wife," when confronting the victim. (Id., citing RT 78.)
- Petitioner had a tape recording he thought demonstrated his wife was cheating on him. (Id., citing RT 100-01.)
- The victim told Detective Gardner that petitioner confronted the victim, petitioner was screwing around with his wife, and that petitioner's wife had come by the victim's house that morning. (Id., citing RT 131, 306-07.)
- Petitioner asked the victim "why are you screwing my wife?" and then petitioner said, "you guys are going to run away with the money." (ECF No. 20 at 4, citing RT 308, 309.)

10

- Petitioner was "pissed" and in a "rage." (Id., citing RT 138-40.)

Although the trial court instructed the jury on attempted voluntary manslaughter, which includes an element that the defendant attempted the killing because he was provoked, petitioner objects that the instruction does not provide for the situation where the defendant attempted the killing because in his mind he felt provoked. (ECF No. 20 at 4.) Petitioner contends that the failure to include such pinpoint instruction violates the Constitution, citing Chapman v. California, 386 U.S. 18, 24 (1967), and Strickland v. Washington, 466 U.S. 668, 693-94, 697, 698 (1984). Petitioner argues that although the jury learned petitioner suspected the victim was having an affair with petitioner's wife, the jury was not properly instructed to enable them to evaluate the affect of such suspicions on petitioner's state of mind. (ECF No. 20 at 5.) Finally, petitioner contends that respondent's argument that the state court's rejection of this claim was reasonable fails because respondent and the state courts ignored the subjective component of the provocation defense. (Id.) Petitioner contends that the requested provocation instruction could have persuaded the jury of the defense theory by explaining how to evaluate petitioner's state of mind based on what he reasonably perceived to be the situation. (Id.)

### 4. State Court Decision

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> Defendant contends the trial court prejudicially erred in refusing to give his special instruction which further defined provocation. He argues the special instruction pinpointed his defense. We conclude the trial court did not err in refusing the special instruction.
>
> *Background*
>
> Over the prosecutor's objection, the trial court instructed the jury in the language of CALCRIM No. 603, which instructed the jury the crime of attempted murder was reduced to attempted voluntary manslaughter if committed in the heat of passion arising from provocation. [FN 2] Defendant sought, and the prosecutor opposed, an additional, special instruction which stated: "The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim, or be conduct reasonably believed by the defendant to have been engaged in by the victim." The court refused to give the special instruction, concluding it was

11

duplicative of CALCRIM No. 603, potentially confusing, and "maybe even not supported by substantial evidence."

[FN 2: The court instructed the jury in the language of CALCRIM No. 603 as follows:

"An attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter if the defendant attempted to kill someone because of a sudden quarrel or in the heat of passion.

"The defendant attempted to kill someone because of a sudden quarrel or in the heat of passion if: One, the defendant took at least one direct but ineffective step toward killing a person; two, the defendant intended to kill that person; three, the defendant attempted the killing because he was provoked; four, the provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from a passion rather than from judgment; and five, the attempted killing was a rash act done under the influence of intense emotional -- of intense emotion that obscured the defendant's reasoning or judgment.

"Heat of passion does not require anger, rage, or any specific emotion. It could be any violent or intense emotion that causes a person to act without due deliberation and reflection. In order for a sudden quarrel or heat of passion to reduce an attempted murder to attempted manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it.

"Although no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or long period of time. It's not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient.

"In deciding whether the provocation was sufficient, consider whether a person of average disposition in the same situation and knowing the same facts would have reacted from passion rather than from judgment.

"If enough time passed between the provocation and the attempted killing for a person of average disposition to, quote, unquote, cool off and regain his or her clear reasoning and judgment, then the attempted murder is not reduced to attempted voluntary manslaughter on this basis.

"The People have the burden of proving beyond a reasonable doubt that the defendant attempted to kill someone and was not acting as a result of sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of attempted murder."]

*Analysis*

In reviewing a claim of instructional error, we determine the correctness of the instructions from the entire charge, rather than parts of an instruction or a particular instruction in isolation. (*People v. Rogers* (2009) 46 Cal.4th 1136, 1177.)

Upon request, a defendant is entitled to an instruction that pinpoints the defense theory. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1142.) A pinpoint instruction "'relate[s] particular facts to a legal issue'" and "'"pinpoint[s]" the crux of a defendant's case.'" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824.) A trial court is not required to give a pinpoint instruction that is argumentative, duplicative, or not supported by the evidence. (*People v. Harris* (2013) 57 Cal.4th 804, 853; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 99.)

"Manslaughter is a lesser included offense of murder. [Citations.] The mens rea element required for murder is a state of mind constituting either express or implied malice. A person who kills without malice does not commit murder. Heat of passion is a mental state that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter. Heat of passion arises if, '"at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment."'[Citation.] Heat of passion, then, is a state of mind caused by legally sufficient provocation that causes a person to act, not out of rational thought but out of unconsidered reaction to the provocation. While some measure of thought is required to form either an intent to kill or a conscious disregard for human life, [i.e., express or implied malice,] a person who acts without reflection in response to adequate provocation does not act with malice." (*People v. Beltran* (2013) 56 Cal.4th 935, 942, fn. omitted.)

"The heat of passion requirement for manslaughter has both an objective and a subjective component. [Citation.] The defendant must actually, subjectively, kill under the heat of passion. [Citation.] But the circumstances giving rise to the heat of passion are also viewed objectively. As we explained long ago in interpreting the same language of section 192, 'this heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances,' because 'no defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1252-1253 (*Steele*).) "'To satisfy the objective or "reasonable person" element of this form of voluntary manslaughter, the accused's heat of passion must be due to "sufficient provocation."'[Citation.]" (*Id.* at p. 1253.)

Here, there was no evidence that Randazzo, by words or conduct, provoked defendant. There was no evidence Randazzo admitted that he was having an affair with defendant's spouse or similar words or

13

that Randazzo had been seen with defendant's spouse in compromising circumstances. Defendant had no reasonable basis to believe Randazzo was engaged in an affair with defendant's spouse. While defendant claimed he believed Randazzo was having an affair with defendant's spouse, "the circumstances giving rise to the heat of passion are also viewed objectively." (*Steele, supra*, 27 Cal.4th at p. 1252.) There was also no evidence Randazzo had set defendant up for an arrest. Although defendant claimed he believed Randazzo had set him up for an arrest, the evidence did not establish the objective component of provocation necessary for conviction of attempted voluntary manslaughter. There was simply no evidence Randazzo had provoked defendant. Defendant appears to have acted on baseless assumptions in his own mind, which will not reduce attempted murder to attempted voluntary manslaughter.

The evidence did not show provocation but the trial court instructed the jury anyway on heat of passion attempted voluntary manslaughter. The trial court instructed the jury with CALCRIM No. 603, which explains that when the defendant attempts to kill another under a heat of passion arising from a provocation that would have caused a person of average disposition to act rashly with intense emotion, the attempted killing may constitute attempted voluntary manslaughter because the heat of passion negates the malice element required for murder. Notwithstanding the lack of evidence, defendant requested an additional pinpoint instruction: "The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim. [Citations.]" This language is from *People v. Lee* (1999) 20 Cal.4th 47 at page 59 (*Lee*) (see also *People v. Moye* (2009) 47 Cal.4th 537, 549-550). But this is only part of the heat of passion requirement and relates to the subjective component. *Lee* continues: "The provocative conduct by the victim may be physical or verbal, but the conduct must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. [Citations.]" (*Lee, supra*, at p. 59.) This part relates to the objective component which was not included in defendant's requested additional pinpoint instruction and, as such, was argumentative and potentially confusing, as the trial court found, since the standard instruction included the objective component and the additional pinpoint did not.

Since no reasonable jury would have concluded defendant *reasonably* believed Randazzo provoked him, he was not entitled to an instruction on attempted voluntary manslaughter, let alone a special instruction further defining provocation. "Thus, although the trial court instructed the jury on heat of passion voluntary manslaughter out of caution, it did not have to do so, as no evidence supported the instructions. Accordingly, the court did not have to give yet more instructions on the point. [Citation.]" (*Steele, supra*, 27 Cal.4th at pp. 1253-1254.)

Even if we were to assume the trial court should have given the additional special instruction concerning provocation, it would have been of no consequence because there was no prejudice. To

14

> determine the probability that the pinpoint instruction would have achieved a different outcome, we review the instructions given in this case. The instruction on attempted voluntary manslaughter provided, in relevant part, that "[t]he provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment" and that "[t]he attempted killing was a rash act done under the influence of intense emotion that obscured the defendant's reasoning or judgment." Further, the instruction on attempted murder provided "[a] decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate and premeditated." Any error from refusing the special instruction would be harmless since the jury was not precluded from finding adequate provocation from Randazzo. In determining the attempted murder was deliberate and premeditated, the jury decided the issue against defendant, which is not surprising since there was no evidence, when viewed objectively, Randazzo, by words or conduct, provoked defendant.
>
> The trial court did not err in refusing the special instruction. Moreover, defendant's contention fails because he has not demonstrated prejudice. Even if his special instruction had been given, it is not reasonably probable he would have received a more favorable result.

(People v. Benta, slip op. at 4-9.)

A criminal defendant is entitled to jury instructions that present the crux of his defense. See Bradley v. Duncan, 315 F.3d 1091, 1098-99 (9th Cir. 2002). In addition, a trial judge must properly instruct the jury regarding the law and all of the elements of the crime. See Hennessy v. Goldsmith, 929 F.2d 511, 514 (9th Cir. 1991). However, there is no entitlement to tailor-made instructions that pinpoint certain aspects of the defense. "'So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion.'" United States v. Hernandez-Escarsega, 886 F.2d 1560, 1570 (9th Cir. 1989) (quoting United States v. Echeverry, 759 F.2d 1451, 1455 (9th Cir. 1985))); see also United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996); Duckett v. Godinez, 67 F.3d 734, 743 (9th Cir. 1995) ("it is *not* reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover the defense theory"). The decision whether to give special jury instructions lies within the discretion of the judge, so long as the instructions given encompass the defense theory. See United States v. Hurd, 642 F.2d 1179, 1181-82 (9th Cir. 1981).

Here, the state appellate court rejected petitioner's claim of instructional error, finding that the evidence did not even support an attempted voluntary manslaughter instruction, and that any error in the trial court's failure to provide the expanded instruction was harmless in any event. This court defers to the appellate court's finding that there was insufficient evidence to support such lesser-included offense. See, e.g., Wainwright v. Goode, 464 U.S. 78, 84 (1983) (federal court is bound by state court's interpretations of state law); Bains v. Cambra, 204 F.3d 964, 972 (9th Cir. 2000) ("a federal court is bound by the state court's interpretations of state law."). Therefore, while petitioner may be entitled to an instruction on his theory of defense if there is a sufficient legal and evidentiary basis to support it, the state court found that the trial evidence did not support such theory. See United States v. Dixon, 201 F.3d 1223, 1231 (9th Cir. 2000) ("a defendant is not entitled to any particular form of an instruction, so long as the instructions given fairly and adequately cover his theories of defense."); United States v. Morton, 999 F.2d 435, 437 (9th Cir. 1993) (a "mere scintilla" of evidence supporting the defendant's theory is not sufficient to warrant a defense instruction) (citing United States v. Jackson, 726 F.2d 1466, 1468 (9th Cir. 1984)). If the given jury instructions, *in toto*, cover the defense theory, it is not reversible error for the trial court to reject the defendant's proposed instruction on the defense theory. Duckett, 67 F.3d at 743; United States v. Mason, 902 F.2d 1434, 1438 (9th Cir. 1990).

Nevertheless, aside from the question of the sufficiency of the evidence in support of an attempted voluntary manslaughter instruction, petitioner fails to cite any United States Supreme Court authority finding that a trial court errs by failing to give a pinpoint instruction where, as here, the jury received broader instructions on the criminal offense and defense thereto. To the contrary, the Supreme Court rejected a claim that "the omission of more complete instructions" on one of the elements of the charged offense rendered a trial fundamentally unfair. Henderson v. Kibbe, 431 U.S. 145, 156 (1977).

Petitioner's request to expand on the attempted voluntary manslaughter instruction by defining provocation attempted to relate particular facts to an element of the charged crime and therefore was not an instruction of the offense, but rather an attempt to raise a reasonable doubt as to an element of the charged crime – in this case, the deliberation and premeditation necessary for

a finding of attempted murder. Here, the jury was instructed on the elements of attempted murder, including the definition of deliberation and malice aforethought necessary for a finding of attempted murder. (RT 370, 380, 384-85.) Such instructions clearly informed the jury that it could not find premeditation and deliberation if the jury believed petitioner's decision to kill was made "rashly, impulsively, or without careful consideration of the choice and its consequences." (RT 385.) An attempted murder committed in response to heat of passion in response to provocation is an example of an attempted murder committed rashly, impulsively, or without careful consideration. The instructions given informed the jury that it could consider provocation evidence to determine whether petitioner had not acted with premeditation and deliberation, but instead attempted to kill the victim impulsively or without careful consideration, such that the attempted offense was attempted voluntary manslaughter, not attempted murder.

Moreover, petitioner's jurors were instructed on the issues relating to petitioner's defense theory that he was provoked to shoot the victim in the heat of passion because petitioner believed that the victim was having an affair with petitioner's wife. Over the prosecution's objection, the jury was instructed that they could reduce the attempted murder crime to attempted voluntary manslaughter if the jury found that petitioner committed the crime in the heat of passion arising from provocation. (RT 386.) The jury was instructed that the prosecution had the burden of proving beyond a reasonable doubt that petitioner attempted to kill someone and was not acting as a result of the heat of passion, and that if the prosecution did not meet such burden, the jury must find petitioner not guilty of attempted murder. (RT 387.) The jurors were instructed concerning the relationship between the charged crime of attempted murder and the lesser-included offense of attempted voluntary manslaughter. (RT 390.) The jury was instructed that they could not find petitioner guilty of both crimes and could only find petitioner guilty of attempted voluntary manslaughter if the jury found him not guilty of attempted murder. (RT 390-91.) The jury was again reminded that the prosecution must prove its case beyond a reasonable doubt. (RT 392.) All of the above instructions encompassed and explained petitioner's defense theory and the law regarding attempted murder and attempted voluntary manslaughter.

////

Finally, under the instructions given, petitioner's counsel was not precluded from arguing a mental state defense bearing on whether the prosecution had proven the elements of premeditation and deliberation. (See, e.g., RT 419, 422-23; 424; 428; 433.) In closing argument, defense counsel argued all of the facts that petitioner contends demonstrate provocation. (RT 418-20.) Defense counsel also argued that if petitioner reasonably believed in his own mind that the victim was engaged in cheating, that was enough to find attempted voluntary manslaughter. (RT 422.)

Therefore, the trial court's decision not to give an additional instruction on provocation that was "duplicative, potentially confusing," and perhaps "not supported by substantial evidence" (RT 349), or "argumentative" as found by the state appellate court, did not render petitioner's trial fundamentally unfair. See Henderson v. Kibbe, 431 U.S. at 156; see also United States v. Sarno, 73 F.3d 1470, 1485 (9th Cir. 1995), cert. denied, 518 U.S. 1020 (1996) (failure to give "an otherwise proper 'theory of the defense' instruction" will be affirmed "if the instructions actually given, taken as a whole, adequately encompass the defendant's theory"). For all of the above reasons, this court finds that the trial court's refusal to give petitioner's proposed modification to CALCRIM No. 603 was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, petitioner is not entitled to relief on this claim.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 19, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/bent0139.157